**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00189-HBB**

**WARREN KEITH FULTON**　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**V.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER[1]**
**SOCIAL SECURITY ADMINISTRATION**　　　　　　　　　　　**DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Warren Keith Fulton ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 21) and Defendant (DN 26) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 17). By Order entered June 21, 2021 (DN 18), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

1  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on November 30, 2018 (Tr. 15, 168-71). Plaintiff alleges to have become disabled on April 27, 2018, as a result of back surgery, neck surgery, spinal stenosis, and arthritis in both feet (Tr. 15, 70, 82, 195). This claim was initially denied on February 16,[2] 2019, and the claim was again denied upon reconsideration on May 24, 2019 (Tr. 15, 78-79, 93-94). Thereafter, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 15, 114-15).

Administrative Law Judge Meribeth McMahon ("ALJ") conducted a video hearing from Paducah, Kentucky on February 5, 2020 (Tr. 15, 29-31). Virtually present at the hearing from Madisonville, Kentucky was Plaintiff and his attorney Steven Wilson (Id.). During the hearing, James B. Adams testified as a vocational expert (Id.).

On April 15, 2020, the ALJ rendered a decision that Plaintiff was not disabled pursuant to the five-step sequential process (Tr. 15-23). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 27, 2018, the alleged onset date (Tr. 17). At the second step, the ALJ determined Plaintiff has two severe impairments: degenerative disc disease and osteoarthritis (Id.). The ALJ opined that Plaintiff's insomnia, obesity, and anxiety and depression do not rise to the level of a severe impairment (Tr. 18). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Id.).

---

2 The ALJ's opinion listed the date of the initial denial as February 18, 2019 (Tr. 15). The Disability Determination and Transmittal documents, as well as the date accompanying the signature of the Disability Adjudicator/Examiner, list the date as February 16, 2019 (Tr. 78-79). Thus, the Court will use February 16.

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except for the following limitations: Plaintiff can lift and carry up to 20 pounds occasionally and 10 pounds frequently; he should never reach overhead with the right upper extremity; he can frequently handle and finger with the bilateral upper extremities; he can sit, stand, and walk up to one hour at a time, for a total of six hours each in an eight-hour day with normal breaks; he should never climb ladders, ropes, scaffolds, ramps, or stairs; he should never balance, kneel, or crawl; he can occasionally stoop or crouch; and he should avoid concentrated exposure to vibrations, unprotected heights, or dangerous machinery (Id.). The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 21).

After this finding, the ALJ went to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 21-22). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since April 27, 2018, the alleged onset date, through the date of the decision, April 15, 2020 (Tr. 22-23). The ALJ also noted that she used the Medical-Vocational Guidelines as a framework to support the finding that Plaintiff is "not disabled" (Tr. 21-22).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 163-65). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton

v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

4

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to Finding No. 5: RFC and the Medical Evidence

1. Arguments of the Parties

Plaintiff asserts that the ALJ substituted her medical findings in place of those in the record (DN 21, pp. 7-9). As an example of this substitution, Plaintiff focuses on the ALJ's notation that Plaintiff denied problems with ambulation (Tr. 20), but Plaintiff asserts that "a lack of problems with ambulation does not equate to a lack of pain" and the record, instead, details no limp with ambulation and leg and back pain (DN 21, p. 7) (citing Tr. 675). Additionally, Plaintiff argues

that "the ALJ's statement that 'the claimant has responded fairly well to these operations' is a subjective and misguided interpretation of the medical evidence" (Id.) (citing Tr. 19). In support of this statement, the ALJ cites to two instances of Plaintiff's condition improving, which Plaintiff conflates to the ALJ "suggesting that any minor improvement in the claimant's conditions is sufficient to defeat his claim for disability" (Id.). Additionally, Plaintiff looks to another portion of the ALJ's analysis where "the ALJ cites to a single instance where the claimant reported 'mild' pain, and uses that to defeat all other allegations of pain in the record[,]" and Plaintiff is "puzzled" by the ALJ's citation to three dates in 2019 "which demonstrate[] severe limitations with respect to claimant's use of his upper extremities" but the ALJ relies upon a 2018 medical record "to negate the objective medical findings from 2019" (Id. at p. 9) (citing Tr. 20). "By selectively citing to these rare instances of improvement and relief, the ALJ is overlooking the bulk of the medical evidence of record" (Id. at p. 7).

Defendant, in contrast, posits that "the ALJ's analysis closely tracked the regulatory guidance" (DN 26, p. 12). Defendant asserts that an ALJ "must determine the extent to which symptoms, such as pain, impact functionality" and the relevant factors to evaluate "non-objective evidence" includes considerations of location, duration, frequency, and intensity of pain, aggravating factors, and measures to alleviate the pain (Id. at pp. 12-13) (citing 20 C.F.R. § 404.1529; SSR 16-3p). Each of the factors detailed in § 404.1529 and SSR 16-3p was "closely track[ed]" by the evidence cited in the ALJ's determination (Id. at p. 14). Defendant also iterates that this finding "is entitled to 'great weight and deference'" (Id. at p. 13) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)). Thus, Defendant asserts that "Plaintiff's argument does not suffice as a basis for disturbing the Commissioner's decision" (Id. at p. 18).

2. Discussion

The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The administrative law judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC finding, the administrative law judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 15, 168-71). *See* 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's

opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Notably, under the regulations administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In assessing a claimant's RFC, the administrative law judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. A claimant's statement that they are experiencing pain or other symptoms will not, taken alone, establish that they are disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Hum. Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. First, the administrative law judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the administrative law judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. When the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the administrative law judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A claimant's level of daily activity is a factor which the administrative law judge may consider in determining the extent to which pain is of disabling severity. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Hum. Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.). The frequency that a claimant sought treatment for the allegedly disabling impairment(s) is also a factor that may be considered in assessing their subjective complaints. 20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v). Additionally, another consideration is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Finally, the medication used to alleviate the alleged pain or other symptoms may be considered. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

In the present case, the ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified (Tr. 19). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility. Since tolerance of pain and/or other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe Plaintiff's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Hum. Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)).

Plaintiff's arguments amount to contentions that the ALJ selectively cited to the record and ignored other portions of the record (DN 21, p. 7). Beginning with the comment that Plaintiff responded to lumbar fusion surgery "fairly well," the ALJ mentioned that Plaintiff "has a history of degenerative disc disease with surgical intervention" (Tr. 19). This surgery occurred on April 20, 2018 (Id.; *see also* Tr. 565). The ALJ detailed the subsequent medical visits and discussed Plaintiff's pain and ambulation reports (Tr. 19-20). Specifically, the ALJ's recitation is as follows:

> First, with respect to the claimant's lumbar spine, the claimant's lower extremity pain was noted to have resolved on postoperative follow-up on July 17, 2018. The claimant's low back pain was also noted to continue to improve. (Exhibit 3F/18). More recently, on September 9, 2019, the claimant was reported to have chronic issues with pain in his lumbar spine as well as his thoracic spine. (Exhibit 9F/4). Magnetic resonance imaging of the thoracic spine was previously reported to show some degenerative change from T2 to T7. (Exhibit 9F/60). Yet, the claimant's pain did not radiate to the lower extremities, and the claimant was noted to get some relief from the pain medication Norco. (Exhibit 9F/4). The claimant's back pain was similarly reported to not radiate down the claimant's legs on July 9, 2019. (Exhibit 9F/26). Further, while a systems review on April 29, 2019, was positive for a gait problem, subsequent systems reviews on July 9, 2019, and August 8, 2019, reflected the claimant denying problems with ambulation. (Exhibit 9F/16, 25, 43).

(Id.).

Plaintiff's argument pertains to the last part of the last sentence of the above paragraph. Plaintiff contends that the documentation does not support the ALJ's conclusion to this effect and that, even then, denying ambulation problems on August 8, 2019, does not "equate to a lack of pain" (DN 21, p. 7). One issue with Plaintiff's argument is that he cites to Tr. 675 (Exhibit 9F/60) to argue the ALJ's findings, but this documentation is from an April 29, 2019, visit to Owensboro

Health Muhlenberg Community Family Medicine (*see* Tr. 675). This document does note Plaintiff's complaints of low back pain and pain with flexion, extension, and lateral rotation, but no limp when ambulating (Id.). The actual August 8, 2019, documentation states that Plaintiff "exhibits decreased range of motion, tenderness, bony tenderness and pain" (Tr. 647). However, in the review of symptoms, on the page the ALJ cited, it reads, "[Plaintiff] [d]enies problems with ambulation, climbing, normal activities" (Tr. 646). This is precisely the proposition that the ALJ discussed and why the ALJ cited to this specific document (Id.). Moreover, at no point in the ALJ's determination does the ALJ tie a lack of ambulation problems with a lack of pain. Instead, the ALJ clearly noted that the previous documentation cited was for complaints and the extent of Plaintiff's pain, while the last sentence was discussing ambulation (*see* Tr. 19-20). Thus, Plaintiff's argument to this aspect attempts to create an issue where none is present.

Next, Plaintiff asserts that the ALJ acted as her own medical expert in this case and substituted her own judgment in place of the medical opinions in the record, specifically in "a subjective and misguided interpretation of the medical evidence" (DN 21, pp. 7-9). However, there is a difference between an administrative law judge having the authority to make an RFC determination based upon the medical evidence and an administrative law judge "substitut[ing] his own medical judgment for that of a treating physician" to make independent medical findings. *See* Rhodes v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 193031, at *25 (W.D. Ky. Mar. 7, 2019) (quoting Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009)). Indeed, "ALJs must not succumb to the temptation to play doctor[.]" Id. (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Looking to the medical evidence and the ALJ's opinion, it is clear that the ALJ in the present matter did not succumb to this temptation. Instead, the ALJ used her

authority to consider and discuss the relevant medical evidence and reports throughout her analysis and craft an RFC consistent with the evidence and opinions. Unlike the Sixth Circuit's finding in Boulis-Gasche v. Comm'r of Soc. Sec., 451 F. App'x 488 (6th Cir. 2011), which was cited by Plaintiff (DN 21, p. 8), the ALJ's determination was not "grounded in a myopic reading of the record." Boulis-Gasche, 451 F. App'x at 494. Instead, the determination is premised upon years of medical documentation, examination results, Plaintiff's subjective complaints, and medical opinions (*see* Tr. 19-21). Moreover, at no point does the ALJ suggest, contrary to Plaintiff's assertions, that "any minor improvement in the claimant's conditions is sufficient to defeat his claim for disability." As for Plaintiff's claim that the ALJ "is overlooking the bulk of the medical evidence of record" (DN 21, p. 7), Plaintiff cites to no documentation which the ALJ "overlooked." Thus, Plaintiff's argument to this effect is unpersuasive.

Finally, Plaintiff takes issue with the ALJ's summarization and discussion of Plaintiff's radiculopathy and neuropathy (DN 21, pp. 8-9). The paragraph reads as follows:

> However, the claimant does appear to have had some recurrent difficulty with radiculopathy and neuropathy in the bilateral upper extremities. Electro diagnostic testing has previously yielded results consistent with sensory neuropathy issues in both of the claimant's upper limbs. (Exhibit 1F/147). In addition, the claimant was reported on April 29, 2019, to have tremor issues with his right hand, and on February 14, 2019, he was reported during physical therapy to be unable to reach overhead due to right shoulder weakness. (Exhibits 7F/22; 9F/47). Be that as it may, his right shoulder pain, which was noted to be related to his neck, was still just characterized as mild on December 18, 2018. (Exhibit 9F/56). Tremor issues have also not consistently been documented in the clinical findings of record.

(Tr. 20). Plaintiff argues that this section cites one instance of "mild" pain to "defeat" all other complaints of pain (DN 21, p. 9), but the portion above makes clear that is not the case. Other

portions of the ALJ's determination details Plaintiff's subjective complaints of pain (Tr. 19-21), and at no point in the entirety of the ALJ's determination is it explicitly or implicitly stated that this one complaint of pain was superior to all others. Additionally, Plaintiff is "puzzled" by the three citations to tremors and right upper extremity weakness while an earlier document "negates" these findings (DN 21, p. 9). But, again, this is not the case. The ALJ's analysis considers the complaints of Plaintiff's weakness and pain when reaching overhead and accounted for this by restricting Plaintiff's RFC to "never reach overhead with the right upper extremity" (Tr. 18). This determination is precisely what an ALJ is required to do when crafting an RFC under the regulations. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546(c).

As such, the ALJ's determination utilizes the proper standards when evaluating the documentation in the record and the medical opinions, properly considered Plaintiff's subjective complaints, and crafted an RFC that appropriately takes all this information into account. Therefore, the ALJ's opinion is supported by substantial evidence and comports with applicable law. Plaintiff's is awarded no relief under this challenge.

Challenge to "Erroneous Standards"

1. Arguments of the Parties

Plaintiff contends that the ALJ utilized "erroneous standards" throughout the decision, which led to an improper finding of "not disabled" (DN 21, p. 6). First, Plaintiff recites the ALJ's language where she found "the weight of the objective medical evidence does not reasonably substantiate a completely debilitating level of physical restriction in this case on a sustained basis" (Id.) (quoting Tr. 19). Plaintiff argues that this "is not the standard by which social security disability cases are decided" (Id.). Plaintiff also disputes the use of "intolerable problems" as a

standard in assessing his impairments (Id.) (quoting Tr. 20). While Plaintiff argues that the use of these "erroneous standards" is an error requiring reversal, Plaintiff alternatively notes that, regardless of the standards, a GRID ruling would have required a finding of disability, if Plaintiff was "restricted to work activities that would preclude any work above the sedentary level" (Id.).

Defendant disputes Plaintiff's argument and argues that the ALJ's determination utilizes the applicable regulations and standards (DN 26, pp. 4-11). Beginning with the evaluation of medical opinions, Defendant iterates that the new regulations are applicable and discusses how the ALJ utilized the new regulations for determining the persuasiveness of the medical opinions (Id.). Moreover, the ALJ considered the agency reviewing physicians' opinions, as they are "considered experts in the field of disability evaluation" (Id. at p. 7) (citing 20 C.F.R. § 404.1513a(b)(1)). While the ALJ found their opinions to be persuasive, the ALJ also "reasonably expanded on the limitations opined . . . to account for the totality of the evidence, including medical records from after their file reviews" (Id. at p. 8) (citing Tr. 20, 7-76, 89-91). Thus, Defendant claims "the ALJ subjected the assessment of the reviewing doctors to proper scrutiny" (Id. at p. 9). Additionally, "[t]he ALJ was within her right to add greater limitations because the ALJ alone is responsible for determining a Plaintiff's residual functional capacity" (Id.). Therefore, Defendant argues that "substantial evidence supports the ALJ's determination . . ." (Id. at p. 11).

2. Discussion

The standards and applicable law necessary to this matter have been thoroughly noted at the beginning of the previous discussion section. Throughout the Court's analysis above, the Court has illustrated how the ALJ has utilized the proper standards in making determinations

throughout the five-step sequential analysis, specifically as it relates to the assessment of Plaintiff's subjective complaints. Thus, Plaintiff's arguments about any purported "erroneous standards" are unavailing. No relief will be granted from these challenges.

As for the brief argument about a GRID ruling (*see* DN 21, p. 6), the Court is inclined to consider this argument waived. It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006). Plaintiff's argument simply asserts that a finding of disability would apply under the GRID rules, but Plaintiff cites no facts or law to substantiate this claim (DN 21, p. 6). Thus, no relief stems from this argument.

Even if the Court does not consider Plaintiff's GRID ruling argument to be waived, it would still not provide relief. Plaintiff's argument contains a significant presumption that is addressed nowhere else in the Fact and Law Summary: "Rather, [Plaintiff] only needs to be restricted to work activities that would preclude any work above the sedentary level" (Id.). As previously noted, the ALJ found Plaintiff's to have the RFC to perform a range of light work with some limitations (Tr. 18). At no point in Plaintiff's Fact and Law Summary does Plaintiff even begin to suggest that the ALJ should have found a different RFC (*see* DN 21). As discussed above, the ALJ's RFC determination is supported by substantial evidence and comports with applicable law, which undermines Plaintiff's contentions even further. Moreover, the ALJ mentioned using the GRID

as a framework for her decision-making (Tr. 21-22), which comports with applicable law.[3] Looking to GRID Rule 202, when presented with a claimant who is limited to light work, is an individual closely approaching advanced age, and has at least the equivalent of a high school education, the administrative law judge is directed towards a finding of "not disabled" regardless of transferability of job skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.13-202.15. This is precisely what the ALJ found when making her determination (Tr. 21-22). The ALJ, however, noted that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations" and utilized testimony by the vocational expert to make a determination, which is also consistent with the applicable law. Therefore, even if the Court does not consider Plaintiff's GRID ruling argument to be waived, the ALJ's determination is supported by substantial evidence and comports with applicable law.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this

---

[3] When an administrative law judge's findings concerning a claimant's age, education, previous work experience, and RFC coincide with all of the criteria of a particular GRID Rule within the medical-vocational guidelines, the administrative law judge may rely on that GRID Rule to satisfy his burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). However, if the administrative law judge's findings do not coincide with all the criteria, then the administrative law judge is limited to using the GRID Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  Id.   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

*[Signature]*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

May 6, 2022

Copies:       Counsel of Record